UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **RENA JOHNSON,** | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **AMERICREDIT FINANCIAL** | ) | |
| **SERVICES, INC. ,** | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | No. 3:08-0405 |
| ********************************* | ) | **Judge Echols** |
| **AMERICREDIT FINANCIAL** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED AUTO DELIVERY AND** | ) | |
| **RECOVERY, INC., and DIVERSIFIED** | ) | |
| **RECOVERY, LLC,** | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM

This is an action for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and for breach of the peace brought by Plaintiff Rena Johnson ("Johnson") as the result of her purchase of a new automobile. Pending before the Court is a Motion for Summary Judgment or Partial Summary Judgment filed by Defendant AmeriCredit Financial Services, Inc. ("AmeriCredit") (Docket Entry No. 30), as well as a Motion for Summary Judgment filed by Third-Party Defendant United Auto Delivery and Recovery, Inc. ("United Auto") (Docket

1

Entry No. 35).[1] Those Motions have been fully briefed by the parties (Docket Entry Nos. 31, 41, 45, 46 & 47).

## I. **FACTUAL BACKGROUND**

Construed in Plaintiff's favor, the facts are as follows.

On October 8, 2006, Plaintiff and Hickory Hollow Kia, ("Hickory Hollow" or the "Dealership") entered into a Retail Installment Contract ("Contract") for the purchase of a 2006 Kia Sorento (the "vehicle"). By virtue of the Contract, Plaintiff granted the Dealership a security interest in the vehicle. In order to finance the purchase of the vehicle, Plaintiff submitted a Credit Application.

The Contract indicates the purchase price of the vehicle was $36,522.36. The Contract also indicates that Plaintiff made a down payment of $3,000.00 in cash,[2] she was given a $3,500.00 rebate, and a trade-in allowance of $25,481.89 for her 2006 Chevrolet Equinox (which was also the payoff amount on that vehicle). According to the Contract, the sales tax on the vehicle was $972.72, and the document fee was $599.99. All totaled, the Contract called for financing in the amount of $32,323.01, and, with an interest rate of 19.25%, Plaintiff was required to make 72 monthly payments of $766.02. Plaintiff signed the contract on October 8, 2006.

---

[1] The other Third-Party Defendant, Diversified Recovery, LLC ("Diversified Recovery") has not filed a dispositive motion.

[2] According to Plaintiff, the finance manager asked if she could write a $3,000.00 check. When Plaintiff said she could not, they agreed that she would write a $1,000.00 check and another check in the amount of $2,000.00 post-dated to November 15, 2006, even though Plaintiff told the finance manager she was not sure her account would have $2,000.00 in it on or after November 15, 2006.

2

Plaintiff claims when she returned home that day, she reviewed the documents more closely and realized that the interest rate of 19.25% was almost twice the 10% rate she was quoted. Plaintiff then called the Dealership and spoke with the finance manager who allegedly told her "that's just your original rate. Once the finance company approves the loan, you will get a lower rate." (Johnson Aff. ¶ 2).

Plaintiff's Contract was with the Dealership which had a financing arrangement with AmeriCredit, but AmeriCredit had the right or accept or reject the deal. On October 9, 2006, AmeriCredit approved Plaintiff's Credit Application pursuant to the terms of the Contract. Subsequently, the Contract, including the security interest in the vehicle, was assigned to AmeriCredit for value, meaning that AmeriCredit then owned the debt owed by Plaintiff.

Plaintiff claims that on October 11, 2006, she again contacted the finance manager to question him about the purchase price of $36,522.36 because the manufacturer's suggested retail price ("MSRP") as reflected on the window sticker of her new vehicle was $23,945.00.[3] When Plaintiff told the finance manager she wanted to rescind the contract, he refused, claiming that her Equinox had been sold. Plaintiff also alleges she was told that when AmeriCredit called her, she was to tell them that she had made a cash down payment of $3,000.00, even though she had not. Plaintiff told the finance manager she was going to stop payment on the post-dated $2,000.00 check. Nevertheless, the Dealership tried to cash the check, but it was refused by the bank. (Johnson Aff. ¶ 2).

---

[3]Plaintiff testified in her deposition that the reason she went to Hickory Hollow in the first place was because they were running television advertisements indicating that there was a $9,000 discount on Kia Sorentos. (Johnson Depo. at 21).

3

Plaintiff failed to make the payments due pursuant to the terms of the Contract. Consequently, AmeriCredit, which now owned the Contract, debt and security interest in the new Kia, contacted Plaintiff by telephone in order to make payment arrangements. Despite those attempts, Plaintiff refused to make payments and also refused to relinquish possession of the vehicle. AmeriCredit then sought to repossess the vehicle by retaining United Auto and Diversified Recovery pursuant to Independent Contractor Service Agreements.

Plaintiff alleges that AmeriCredit did not simply place phone calls asking that she make payments or turn over the vehicle. Instead, beginning in September 2007, she received frequent, threatening phone calls demanding that she make payment and she was repeatedly harassed by both AmeriCredit and United Auto. More specifically, Plaintiff states the following in her Affidavit:

• In January 2008, she began receiving phone calls every two hours from AmeriCredit during which she was threatened that legal action would be taken against her.

• On January 22, 2008, she spoke with several different individuals who claimed they were AmeriCredit employees and was threatened that she could be prosecuted for fraud because of false statements in her Credit Application. The last call that day ended around 5:45 p.m. and, at 7:30 p.m., Plaintiff heard loud banging at her door and her name being called, saw a light shine on the front of the house, saw someone use a flashlight to peer into the windows, and later discovered a "legal looking document" had been placed in her door. Plaintiff claims that she later learned that the person at her home worked for United Auto. Plaintiff did not call the police because she thought that it may have been the police at the door and that they had been sent by AmeriCredit .

• On February 4, 2008 and February 12, 2008, the same individual returned and banged on her door.

• On February 12, 2008, her garage was broken into and $17,000 in items were taken from the garage.

• On February 22, 2008, an individual flashed lights on her house and banged on her door. She refused to answer the door and the next day she found that someone again had forced open her garage door.

4

- On February 24, 2008, a person identifying herself as "Investigator Moss" (who called from the same telephone number as that on the "legal looking documents" left on January 22, 2008) telephoned several times, but Plaintiff refused to take the call. Plaintiff's garage was broken into that same night.

- On March 14, 2008, Plaintiff received a call from a woman identifying herself as Mary Adams from AmeriCredit who "threatened to send the law over there" if Plaintiff did not turn over the vehicle.

- On March 17, 2008, United Auto employees unsuccessfully tried to communicate with Plaintiff at her residence and, three days later, someone again broke into her garage.

- Plaintiff has lived in the same residence for three years and the only time anyone has broken into (or attempted to break into) her garage was during the period between February 12, 2008 and March 20, 2008, when United Auto was attempting to repossess her car on behalf of AmeriCredit.

(Johnson Aff. ¶ 5).

Based on these events, Plaintiff filed suit in the Circuit Court of Davidson County alleging that AmeriCredit violated the FDCPA and that, in conjunction with its agents, breached the peace under state law by breaking into her garage and stealing items therefrom. AmeriCredit removed the action to this Court asserting federal question jurisdiction because of the FDCPA claim.

After removal, AmeriCredit filed its Answer and Counterclaim (Docket Entry No. 5). In its Counterclaim, AmeriCredit alleges breach of contract because Plaintiff failed to make payments in accordance with the Contract. AmeriCredit seeks possession of the vehicle, money damages for the balance remaining under the Contract ($33,600.73), costs, and attorney's fees. In her "Answer to Counterclaim" (Docket Entry No. 11), Plaintiff raises as an "affirmative defense" that the contract is unconscionable and that she is therefore entitled to a set-off. She also filed a "Counterclaim" in which she alleges that AmeriCredit, in conjunction with Hickory Hollow, engaged in a predatory lending scheme, and makes claims for "recision, fraud and deceit." (Id. at 3).

5

Subsequently, AmeriCredit filed Third Party Complaints against United Auto (Docket Entry No. 12) and Diversified Recovery (Docket Entry No. 13) claiming that, pursuant to the Independent Contractor Service Agreements, it is entitled to indemnity if it is held liable or forced to pay damages to Plaintiff for the acts and/or omissions of United Auto and/or Diversified Recovery. Plaintiff then filed an "Amendment to Complaint" in which she acknowledges the filing of the Third Party Complaints and in which she maintains that AmeriCredit is liable for the wrongdoing of its agent United Auto and further that United Auto is also "liable to plaintiff for the actions alleged in the original complaint." (Docket Entry No. 24 at 1).

## II. SUMMARY JUDGMENT STANDARDS

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to

6

support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

**A.   AMERICREDIT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

AmeriCredit moves for summary judgment on all of Plaintiff's claims. Alternatively it requests partial summary judgment, but does not specify whether partial summary judgment should be granted with respect to either or both of Plaintiff's claims and/or its Counterclaim against Plaintiff.

**1. Plaintiff's FDCPA Claim**

AmeriCredit argues that it is entitled to summary judgment on Plaintiffs FDCPA claim because it was not a "debt collector" within the meaning of the Act. Plaintiff contends, however, that AmeriCredit is a "debt collector" because it purchases debts created by and owed to automobile dealers for the purposes of the collection of the debt, and because she was in default at the time the Contract was assigned.

"Congress enacted the FDCPA to eliminate 'abusive, deceptive, and unfair debt collection practices.'" Barany-Snyder v. Weiner, 539 F.3d 327, 332-33 (6th Cir. 2008)(quoting, 15 U.S.C. § 1692(a)). "[T]he FDCPA is 'extremely broad,' crafted in response to what Congress perceived to be a widespread problem." Id. Nevertheless, to fall within the scope of the FDCPA, any entity

7

seeking to collect a debt must be a "debt collector," not a "creditor."  See, MacDermid v. Discover Finan. Servs., 488 F.3d 721, 735 (6th Cir. 2007).

A "debt collector" is defined under the FDCPA as follows:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  The FDCPA also specifically excepts from the definition of "debt collector," "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person[.]"  15 U.S.C. § 1692a(6).  Additionally, the FDCPA defines the term "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

Where, as here, the claim is that a debt was in default at the time of assignment, the distinction between a "debt collector" and a "creditor" can become blurred.  As one court has recently explained:

> . . . "[F]or debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category." . . . [I]n such a case – one involving a debt originated by another and subsequently acquired by the entity attempting collection – "the Act uses the status of the debt at the time of the assignment" to distinguish between a debt collector and a creditor. . . .
> 　　The Act draws this distinction in a rather indirect way, however – by the exclusionary language . . . in the statutory definitions of creditor and debt collector. That is, the definition of creditor excludes those who acquire and attempt to collect a "debt *in default*," § 1692a(4)(emphasis added), while the definition of debt collector excludes those who acquire and attempt to collect "a debt which was *not*

8

*in default* at the time it was obtained," § 1692a(6)(F) (emphasis added). So one who acquires a "debt in default" is categorically *not* a creditor; one who acquires a "debt not in default" is categorically *not* a debt collector.

Thus, . . . the Act "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not."

McKinney v. Cadleway Properties, Inc. 548 F.3d 496, 500, 501 (7th Cir. 2008)(italics in original)(internal citations omitted).

In this case, Plaintiff argues "the evidence shows" AmeriCredit purchases the debts owed to automobile dealers and as support for that statement points to paragraph 8 of the Affidavit of Mike Santangelo ("Santangelo"), the Assistant Vice President of Collections for AmeriCredit. (Docket Entry No. 41 at 2). In that paragraph, Santangelo states that "[t]he Contract, including the security interest, was subsequently assigned to AmeriCredit for value and in good faith." (Santangelo Aff. ¶ 8). However, Santangelo also unequivocally states that "AmeriCredit is an automobile finance company, primarily in the business of extending credit to automobile purchasers" and that it "does not collect debts due to others." (Id. ¶¶ 4-5).

Contrary to Plaintiff's apparent position, the fact that AmeriCredit received the debt by virtue of an assignment does not automatically make AmeriCredit a "debt collector." Once the Contract was assigned to AmeriCredit for value and in good faith, the debt it represented was owed to AmeriCredit and not Hickory Hollow, and AmeriCredit could be viewed as a creditor at that point. Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 107 (6th Cir. 1996).

Plaintiff next argues that AmeriCredit was a debt collector for purposes of the debt at issue because the loan was in default at the time it was assigned to AmeriCredit. In this regard, Plaintiff claims she was in default on October 11, 2008 when she stopped payment on the post-dated check.

9

AmeriCredit insists that Plaintiff was not in default when it was assigned the loan and for support relies upon the following from Santangelo's Affidavit:

> 6. On October 9, 2006, AmeriCredit approved the Plaintiff's Credit Application pursuant to the terms of the Retail Installment Contract;
>
> 7. The annual percentage rate on the loan was 19.25%, which was based upon the Plaintiff/Counter-Defendant's credit application and credit history;
>
> 8. The Contract, including the security interest, was subsequently assigned to AmeriCredit for value and in good faith[.]

(Santangelo Aff. ¶¶ 6-8).

The FDCPA does not define "default," and accordingly a court looks to the definition set forth in the parties' contract to determine whether the debt at issue was in default when assigned. See, Moen v. Merrick Bank Corp., 2007 WL 1381411 at *1 (N.D.Cal. 2007); Hartman v. Meridian Fin. Serv., Inc., 191 F.Supp.2d 1031, 1042-44 (W.D. Wis. 2002). In this case, the Contract states that a default occurs when "[y]ou do not pay any payment on time; [y]ou start a proceeding in bankruptcy or one is started against you or your property; or [y]ou break any agreement in this contract." (Contract p.2 ¶3b). Since Plaintiff allegedly agreed to make a $3,000 cash down payment but stopped payment on two-thirds of that amount, she was arguably in default at that time.

However, whether Plaintiff was in default when the Contract was *assigned* is not resolved by the record before the Court. She claims she stopped payment on the $2,000 check on October 11, 2006, and, contrary to AmeriCredit's argument, Santangelo's Affidavit does not address that question. All he states is that Plaintiff's Credit Application was *approved* on October 8, 2006 (before the alleged default) and that it was *subsequently* assigned.

Both the statutory definition of a "debt collector" and the exclusionary language in the statutory definition of a "creditor" appear to require that the collection efforts be "for another."

10

However, because the terms are mutually exclusive and one is either a "debt collector" or a "creditor" for purposes of a particular transaction, appellate courts have repeatedly held that assignees are debt collectors if the debt sought to be collected was in default when it was acquired, and this remains so even if the assignee then owns the debt and is collecting for itself. See, McKinney, 548 F.3d at 501; see also, FTC v. Check Investors, Inc., 502 F.3d 159, 171-74 (3d Cir. 2007); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534,536 (7th Cir. 2003). For its part, the Sixth Circuit in Montgomery v. Huntingdon Bank, 346 F.3d 693, 699 (6th Cir. 2003) and Wadlington, 76 F.3d at 106-107 indicated, albeit arguably in dicta, that the originator or assignee of a loan is not a "debt collector" so long as it receives the loan at a time it was not in default. See, Brown v. Saxon Mortgage Serv. Inc., 2005 WL 3244295 at *2 (S.D. Ohio 2005)(citing Montgomery for the proposition that a bank was not a debt collector where debt was not in default when acquired and Wadlington for the proposition that "a debt collector does not include the assignment of a debt, as long as the debt was not in default at the time it was assigned").

In this case, a genuine issue of material fact exists as to whether the Plaintiff was in default when AmeriCredit was assigned the loan. Accordingly, the Court will not grant summary judgment on Plaintiff's FDCPA claim against Americredit.

**2. Plaintiff's Breach of the Peace Claim**

Plaintiff seeks to hold Defendants liable on the theory that United Auto, as the agent for AmeriCredit, breached the peace because of United Auto's efforts to repossess the vehicle.

"After default, a secured party may take possession of collateral without judicial process if he can do so without a breach of the peace." Davenport v. Bates, 2006 WL 3627875 at *19 (Tenn. Ct. App. 2006)(citing T.C.A. § 47-9-609). Unless the contract provides otherwise, prior notice to

11

the debtor is not required "because doing so would allow an unscrupulous debtor to hide or dispose of collateral and avoid rightful repossession by a secured party." Id. The Tennessee Consumer Protection Act does not apply to repossessors and they can therefore use deceptive practices that would otherwise be unlawful under the act and can take property from open areas or driveways without being in breach of the peace. Id.

"Offenses against individuals, generally criminal offenses, must be accompanied by violence or a threat of violence in order to be considered a breach of the peace." Davenport v. Chrysler Credit Corp., 818 S.W .2d 23, 29 (Tenn. Ct. App.1991). "However, conduct that is 'incompatible with the tranquility and good order which governments are organized to maintain' need not involve violence or a threat of violence in order to be considered a breach of the peace." Id. (citation omitted).

In this case, even if United Auto employees called Plaintiff's phone, banged on her door, shouted her name, and shined lights on her house and in her windows, that alone does not constitute breach of the peace, and Plaintiff does not argue otherwise. She argues, instead, that United Auto breached the peace when it allegedly attempted to break into her garage on several occasions and when it allegedly successfully broke into her garage and stole $17,000.00 worth of items.

Forced entry, including "unauthorized entry into a closed or locked garage," constitutes breach of the peace. Id., 818 S.W.2d at 30,  Moreover, AmeriCredit is responsible for the acts of its agents, including United Auto and Diversified Recovery, "as one cannot delegate the duty not to breach the peace." Malone v. Associates Commercial Corp., 2000 WL 486754 at *1 (Tenn. Ct. App. 2000).

12

In this case, Plaintiff has presented circumstantial evidence from which a reasonable jury could conclude that AmeriCredit and/or its agent United Auto and/or its employees broke into her garage, or attempted to do so. When the facts are construed in Plaintiff's favor, this includes evidence that beginning in January 2008, Plaintiff started receiving phone calls every two hours from AmeriCredit threatening legal action, one of which was received on January 22, 2008. Shortly after that call, a United Auto employee appeared at Plaintiff's home, banged loudly on her door, shined a light in her windows, peered inside and left a document on her door. That same individual returned twice thereafter in the following weeks and banged on her door. On February 12, 2008, her garage was burglarized and $17,000 in items were stolen. Ten days later, February 22, 2008, someone again appeared at her home, shined a flashlight on her house, banged on her door and that same night her garage was again broken into. Two days after that, February 24, 2008, an alleged "investigator" called her home in regard to her vehicle and the following day Plaintiff discovered her garage door had been forced open. On March 14, 2008, someone identifying herself as "Mary Adams" from AmeriCredit phoned Plaintiff and "threatened to send the law" to Plaintiff's house. Three days later, May 17, 2008, someone from United Auto tried to contact Plaintiff, and three days after that, March 20, 2008, someone again broke into her garage.

Such evidence suggest intensive collection efforts over a short period of time during which time Plaintiff's garage was broken into on four separate occasions and $17,000 in items were taken from the garage. Plaintiff did not experience break-ins either before or since the collection efforts started and a reasonable jury could conclude from such facts that the culprits behind the break-in were employees of United Auto trying to obtain possession of the KIA. Summary judgment will not be granted on the breach of peace claim because Plaintiff has raised a genuine issue of material

13

fact about whether one or more of the Defendants were responsible for the break-ins of her garage and theft of items stored therein. A jury will have to assess the credibility of the witnesses and weigh the facts to determine whether Plaintiff's theory and allegations against the Defendants are true.

### 3. AmeriCredit's Counterclaim

AmeriCredit moves for summary judgment on its claim that Plaintiff breached the Contract and that it is therefore entitled to possession of the vehicle and damages. As support for this position, AmeriCredit points exclusively to the Contact which lists the purchase price, the down payment, the rebate to be applied, the trade-in allowance, the sales tax, the document fee, the interest rate, and the number and amount of installment payments.

As a general rule, a party is presumed to know the contents of a contract she signs and is bound by that contract. This is because the public policy of this state recognizes that competent parties are free to "strike their own bargains" and "[a]ccordingly, the courts do not concern themselves with the wisdom or folly of a contract, . . . and will not relieve a party of its contractual obligations simply because the contract later proves to be burdensome or unwise." Ellis v. Pauline S. Sprouse Residuary Trust, 280 S.W.3d 806, 814 (Tenn. 2009). Nevertheless, "[a] contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon sufficient consideration free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" Doe v. HCA Health Serv's of Tennessee, Inc., 46 S.W.3d 191, 196 (Tenn. 2001).

In this case, Plaintiff is not contending that she did not sign the Contract or that the Contract does not contain the terms that are embodied in it. What she does contend, however, is that the

14

terms reflected were not the agreement of the parties, that the contract terms were changed without her knowledge, that she was misled, and that the Contract is unconscionable. Specifically, she claims Hickory Hollow Kia,[4] was guilty of misrepresentation and fraud by not providing the advertised $9,000.00 discount on the purchase of the Vehicle, charging significantly more than the MSRP for the Vehicle, charging a doc fee without notice, authorization or disclosure, and representing that the interest rate would be 10% instead of 19.25%.

Claims of fraud are generally not resolvable by way of summary judgment. Fowler v. Happy Goodman Family, 575 S.W.2d 496, 499 (Tenn. 1978). Likewise whether a plaintiff reasonably relied on an alleged misrepresentation is generally a question of fact and not appropriate for summary judgment. Biancheri v. Johnson, 2009 WL 723540 at *8 (Tenn. Ct. App. 2009)(collecting cases).

Given the testimony in Plaintiff's deposition and the averments made in her Affidavit which the Court presently must construe in her favor, summary judgment is not appropriate on AmeriCredit's Counterclaims because genuine issues of material fact exist with respect to whether Hickory Hollow engaged in misrepresentation and/or fraud.

**B.**     **UNITED AUTO'S MOTION FOR SUMMARY JUDGMENT**

United Auto moves for summary judgment on both the FDCPA and breach of peace claims. Plaintiff did not respond to the Motion with respect to her FDCPA claim against United Auto and the only evidence before the Court is that United Auto is a towing company (Wilson Aff. ¶ 4) that was acting in its role as a repossession company when it allegedly had dealings with Plaintiff.

---

[4]The Contract was assigned to AmeriCredit without recourse and provided that the "holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods." (Contract, p.2 NOTICE). AmeriCredit does not contend that it is not a proper Defendant to Plaintiff's claims for fraud and/or misrepresentation.

15

However, the Sixth Circuit has made clear that a repossession agency does not fall within the definition of a "debt collector" for purposes of the FDCPA. Montgomery, 346 F.3d at 699-701. Thus, summary judgment will be granted to United Auto on the FDCPA claim.

As for the breach of peace claim, United Auto is not entitled to summary judgment for the reasons set forth regarding that claim against AmeriCredit. In reaching this conclusion, the Court has consider the Affidavit of Robert J. Wilson, the President of United Auto, in which he avers that no one from United Auto broke into Plaintiff's garage. This Affidavit is insufficient to overcome the circumstantial evidence presented by Plaintiff, particular since the Affidavit is conclusory and is not shown to be based upon personal knowledge.

## IV. **CONCLUSION**

On the basis of the foregoing, AmeriCredit's Motion for Summary Judgment will be denied. Defendant United Auto's "Motion for Summary Judgment" (Docket Entry No. 35) will be granted with respect to Plaintiff's FDCPA, but denied with respect to Plaintiff's breach of the peace claim.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE